# EXHIBIT A. 2

MDL PRETRIAL CAUSE NO _______

(TRIAL CAUSE NO. 2021-41424)

| | | |
|---|---|---|
| ALAN ROSEN AND JUDY ROSEN, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF DANIEL A. ROSEN, DECEASED, *Plaintiffs*, | § § § § § | IN THE DISTRICT COURT<br><br>334TH JUDICIAL DISTRICT |
| v. | § § § | |
| CVS HEALTH CORPORATION, et al., *Defendants.* | § § | HARRIS COUNTY, TEXAS |

******************************************************************

MASTER FILE NO. 2018-63587

| | | |
|---|---|---|
| | § | IN THE DISTRICT COURT |
| | § | |
| IN RE: TEXAS OPIOID LITIGATION | § | 152ND JUDICIAL DISTRICT |
| | § | |
| | § | HARRIS COUNTY, TEXAS |

**NOTICE OF TRANSFER OF TAG-ALONG CASE PURSUANT TO RULE 13 TEXAS RULES OF JUDICIAL ADMINISTRATION**

Defendant Johnson & Johnson ("J&J") files this Notice of Transfer of Tag-Along Case in compliance with Texas Rules of Judicial Administration 13.5(a) and 13.5(e), and hereby give notice to the pretrial and trial court that this, the above-captioned case, is deemed transferred as a tag-along case to the pretrial court in the 152nd District Court of Harris County, Texas upon the filing of this Notice in both the pretrial and trial courts.

On June 13, 2018, the Texas MDL Panel granted the Distributor Defendants' and Manufacturer Defendants' Motions to Transfer opioid-related Texas cases, and all future related Texas cases, to a pretrial court under Rule 13 of the Texas Rules of Judicial Administration. (*See* Appendix C, Order Granting Motions to Transfer.) Shortly after, the Texas MDL Panel appointed the Honorable David Peeples as the pretrial judge for the Texas Opioid Litigation MDL.

Accordingly, the Texas MDL Panel transferred "all pending cases, together with any tagalong cases, to him." Judge Peeples recused himself on August 25, 2018, due to a potential conflict of interest for which all parties did not waive the grounds for recusal under the Texas Rules of Civil Procedure 18b(e).

The Texas MDL Panel reassigned the proceeding to the Honorable Robert Schaffer on September 5, 2018, and ordered "the cases listed in the Appendices of the Motions for Transfer and all tag-along cases" transferred to the 152nd District Court of Harris County. (*See* Appendix D, Order Appointing Pretrial Court.) The petition at issue is an action against opioid manufacturers, retailers, and distributors alleging claims arising from the opioid crisis. (*See* Appendix E, Plaintiffs' Petition.) This matter therefore falls within the "tag-along case" definition contained in Texas Rule of Judicial Administration Rule 13.2(g), meaning it is related to the cases in the MDL transfer order but not itself the subject of an initial MDL motion or order.

Subject to Texas Rule of Judicial Administration 13.5(e), the case is deemed transferred to the MDL pretrial court upon filing notice in the trial court and pretrial court. Any service issued on or before September 12, 2019 may be completed and returns filed in the pretrial court, but the trial court must take no further action except for good cause and after conferring with the pretrial court. *See* Tex. R. Jud. Admin. 13(b).

Pursuant to Texas Rules of Judicial Administration 13.5(a)(1)-(3), the attached Appendices A-C contain a list of the parties who have appeared and remain in the case, a list of the parties who have not yet appeared, and a copy of the MDL transfer order.

Dated: August 5, 2021

Respectfully submitted,

By: ______________________________
Stephen E. McConnico
State Bar No. 13450300
smcconnico@scottdoug.com
Steven J. Wingard
Texas Bar No. 00788694
swingard@scottdoug.com
John W. Ellis
State Bar No. 24078473
jellis@scottdoug.com
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
Telephone: 512-495-6300
Facsimile: 512-495-6399

Charles C. Lifland
*Admitted pro hac vice pursuant to CMO No. 1*
clifland@omm.com
Sabrina H. Strong
*Admitted pro hac vice pursuant to CMO No. 1.*
sstrong@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Stephen D. Brody
*Admitted pro hac vice pursuant to CMO No. 1.*
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300

**ATTORNEYS FOR DEFENDANT JOHNSON & JOHNSON**

## CERTIFICATE OF SERVICE

I certify that I caused a true and correct copy of the foregoing document to be served in accordance with the Texas Rules of Civil Procedure on all counsel of record via electronic service and to the counsel listed below via email on August 5, 2021.

*/s/ John W. Ellis*
John W. Ellis

Susannah B. Chester-Schindler
Peter A. Kraus
WATERS & KRAUS, LLP
3141 Hood Street, Suite 700
Dallas, Texas 75219
Telephone: (214) 357-6244
Facsimile: (214) 357-7252
schester@waterskraus.com
**ATTORNEYS FOR PLAINTIFFS**

Phil Griffis
pgriffis@griffislawfirm.com
Jerry Mason
jmason@griffislawfirm.com
Law Office of Phil Griffis
1322 Space Park Drive, Suite A248
Houston, Texas 77058
Telephone: (832) 284-4013
Facsimile: (713) 493-7253
**ATTORNEYS FOR WALGREEN CO.**
**f/k/a C.R. WALGREEN AND COMPANY**

# APPENDIX A
## PARTIES WHO HAVE APPEARED AND REMAIN IN THE CASE

APPENDIX A

Plaintiffs, Alan Rosen and Judy Rosen, Individually and on behalf of the Estate of Daniel A. Rosen, deceased.

Counsel:

Susannah B. Chester-Schindler
Peter A Kraus
WATERS & KRAUS, LLP
3141 Hood Street, Suite 700
Dallas, Texas 75219
(214) 357-6244
(214) 357-7252 Fax

Defendant, Walgreen Co. f/k/a C.R. Walgreen and Company

Counsel:

Phil Griffis
pgriffis@griffislawfirm.com
Jerry Mason
jmason@griffislawfirm.com
LAW OFFICE OF PHIL GRIFFIS
1322 Space Park Drive, Suite A248
Houston, Texas 77058
Telephone: (832) 284-4013
Telecopier: (713) 493-7253

**<u>APPENDIX B</u>**

## PARTIES WHO HAVE NOT YET APPEARED IN THE CASE

# APPENDIX B

CVS Health Corporation
CVS Pharmacy, Inc. f/k/a CVS, Inc. f/k/a CVS Distribution, Inc
Hikma Pharmaceuticals USA Inc. f/k/a West Ward Pharmaceuticals Corporation;
Hoffmann-La Roche Inc. a/k/a Roche;
Johnson & Johnson (Sued Individually, And As Successor-In-Interest To Janssen);
Johnson & Johnson Consumer Inc.;
McKesson Corporation;
Pfizer, Inc.;
Teva Pharmaceuticals USA, Inc.;

## APPENDIX C

## ORDER GRANTING MOTIONS TO TRANSFER

# ORDER OF MULTIDISTRICT LITIGATION PANEL

Order Pronounced June 13, 2018

THE MOTION FOR TRANSFER IN THE FOLLOWING MULTIDISTRICT LITIGATION CASE IS GRANTED:

18-0358 IN RE TEXAS OPIOID LITIGATION

Defendants Purdue Pharma L.P., et al. and McKesson Corporation, et al. joint motions to transfer under Rule 13 of the Texas Rules of Judicial Administration are granted. The panel will issue a second order at a later date naming the judge to whom the cases will be transferred.

Justice Brown delivered the opinion of the MDL Panel.

## APPENDIX D

## ORDER APPOINTING JUDGE SCHAFFER

# ORDER OF MULITDISTRICT LITIGATION PANEL

Order Issued September 5, 2018

APPOINTMENT OF PRETRIAL JUDGE IN THE FOLLOWING MULTIDISTRICT LITIGATION CASE:

18-0358 IN RE TEXAS OPIOID LITIGATION

The Manufacturer Defendants Purdue Pharma L.P., et al. and the Distributor Defendants McKesson Corporation, et al.'s Motions to Transfer were granted on June 13, 2018. Pursuant to Rule 13 of the Texas Rules of Judicial Administration, the cases listed in the Appendices of the Motions for Transfer and all tag-along cases are transferred to Judge Robert Schaffer of the 152nd District Court of Harris County.

## <u>APPENDIX E</u>

## PLAINTIFFS' PETITION

2021-41424 / Court: 334

| | |
|---|---|
| **ALAN ROSEN AND JUDY ROSEN,** *Individually and on behalf of the Estate of* **DANIEL A. ROSEN, Deceased,** | **IN THE DISTRICT COURT OF** |
| ***Plaintiffs*,** | |
| **v.** | |
| **CVS HEALTH CORPORATION**, a Delaware Corporation with its principal place of business in the State of Rhode Island;<br>**CVS PHARMACY, INC.** *f/k/a* CVS, INC. *f/k/a* CVS DISTRIBUTION, INC., a Rhode Island Corporation with its principal place of business in the State of Rhode Island; | **HARRIS COUNTY, TEXAS** |
| **HIKMA PHARMACEUTICALS USA INC.** *f/k/a* WEST WARD PHARMACEUTICALS CORPORATION, a Delaware Corporation with its principal place of business in the State of New Jersey;<br>**HOFFMANN-LA ROCHE INC.** *a/k/a* ROCHE, a New Jersey Corporation with its principal place of business in the State of New Jersey;<br>**JOHNSON & JOHNSON** (*sued individually and as successor-in-interest to* JANSSEN), a New Jersey Corporation with its principal place of business in the State of New Jersey;<br>**JOHNSON & JOHNSON CONSUMER INC.,** a New Jersey Corporation with its principal place of business in the State of New Jersey;<br>**MCKESSON CORPORATION**, a Delaware Corporation with its principal place of business in the State of Texas;<br>**PFIZER, INC**., a Delaware Corporation with its principal place of business in the State of New York;<br>**TEVA PHARMACEUTICALS USA, INC**., a Delaware Corporation with its principal place of business in the State of New Jersey, | **_________ JUDICIAL DISTRICT** |

**WALGREEN CO.** *f/k/a* C.R. WALGREEN AND COMPANY, an Illinois Corporation with its principal place of business in the State of Illinois,

*Defendants.*

## PLAINTIFFS' ORIGINAL PETITION FOR WRONFUL DEATH AND SURVIVAL DAMAGES

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW, Plaintiffs, **ALAN ROSEN AND JUDY ROSEN**, *Individually and on behalf of the Estate of* **DANIEL A. ROSEN, Deceased**, complaining of the various Defendants listed below, and for cause of action would show the Court and Jury as follows:

## I. JURISDICTION AND VENUE

1. Pursuant to T.R.C.P. 190.1, discovery will be conducted under Level 2 (T.R.C.P. 190.3); however, Plaintiffs intend to seek a Level 3 discovery plan. Pursuant to C.P.R.C. 15.002(a)(1), venue is proper in Harris County because all or a substantial portion of the acts or omissions that form the basis for this lawsuit occurred in this County. Defendant McKesson Corporation maintains its principal place of business in Irving Texas and, as a result, jurisdiction in the state courts of Texas is proper.

2. The damages sought by Plaintiffs, exclusive of interests and costs, exceed the minimum jurisdictional limits of the Court.

## II. PARTIES

3. Plaintiff **ALAN ROSEN** and **JUDY ROSEN** reside at 533 Chelsea Street, Bellaire, Texas 77401.

4. Defendant, **CVS HEALTH CORPORATION**, a Delaware Corporation with its principal place of business in the State of Rhode Island, has at all times relevant to this litigation conducted business in this State and while it is required to maintain a registered agent, it has not designated such an agency. Therefore, said corporation may be served with process through the Secretary of State for the State of Texas at its domicile registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code §§17.041-.045. This Defendant is being sued as a Supplier/Distributor Defendant.

5. Defendant, **CVS PHARMACY, INC.** *f/k/a* CVS, INC. *f/k/a* CVS DISTRIBUTION, INC., a Rhode Island Corporation with its principal place of business in the State of Rhode Island, may be served with process through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. This Defendant is being sued as a Supplier/Distributor Defendant.

6. Defendant, **HIKMA PHARMACEUTICALS USA INC**. *f/k/a* WEST WARD PHARMACEUTICALS CORPORATION, a Delaware Corporation with its principal place of business in the State of New Jersey, may be served with process through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. This Defendant is being sued as a Manufacturer and Distributor Defendant.

7. Defendant, **HOFFMANN-LA ROCHE INC.** *a/k/a* ROCHE, a New Jersey Corporation with its principal place of business in the State of New Jersey, may be served with process through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. This Defendant is being sued as a Manufacturer Defendant.

8. Defendant, **JOHNSON & JOHNSON** (*sued individually and as successor-in-interest to* JANSSEN), a New Jersey Corporation with its principal place of business in the State of New Jersey, has at all times relevant to this litigation conducted business in this State and while it is required to maintain a registered agent, it has not designated such an agency. Therefore, said corporation may be served with process through the Secretary of State for the State of Texas at its domicile registered agent, Johnson & Johnson, One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code §§17.041-.045. This Defendant is being sued as a Manufacturer and Distributor Defendant.

9. Defendant, **JOHNSON & JOHNSON CONSUMER INC.,** a New Jersey Corporation with its principal place of business in the State of New Jersey, may be served with process through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. This Defendant is being sued as a Manufacturer and Distributor Defendant.

10. Defendant, **MCKESSON CORPORATION,** a Delaware Corporation with its principal place of business in the State of Texas, may be served with process through its registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. This Defendant is being sued as a Manufacturer and Distributor Defendant.

11. Defendant, **PFIZER, INC**., a Delaware Corporation with its principal place of business in the State of New York, may be served with process through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. This Defendant is being sued as a Manufacturer and Distributor Defendant.

12. Defendant, **TEVA PHARMACEUTICALS USA, INC**., a Delaware Corporation with its principal place of business in the State of New Jersey, may be served with process through its registered agent for service of process, Corporate Creations Network Inc., 5444 Westheimer #1000, Houston, Texas 77056. This Defendant is being sued as a Manufacturer and Distributor Defendant.

13. Defendant, **WALGREEN CO.** *f/k/a* C.R. WALGREEN AND COMPANY, an Illinois Corporation with its principal place of business in the State of Illinois, may be served with process through its registered agent for service of process, Prentice Hall Corporation System, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. This Defendant is being sued as a Distributor and Supplier Defendant.

14. This action is brought and these allegations are made pursuant to Tex. Civ. Prac. & Rem. Code § 71.031.

15. Each and every allegation in this Petition is expressly made in the alternative to, as well as in addition to, every other allegation.

## III. NEGLIGENCE AND STRICT LIABILTY CLAIMS AS TO ALL DEFENDANTS

16. The Defendants are or were engaged in the business of designing, manufacturing, producing, selling, distributing, supplying and otherwise putting into the stream of commerce opioid medications without substantial change in the condition in which they were designed, manufactured, produced and otherwise put into the stream of commerce and same were a proximate and producing cause of the addiction, injuries and death of Decedent DANIEL A. ROSEN. As such, Defendants should be held strictly liable for the design, manufacture, production, sale, distribution, and supply of

an unreasonably dangerous product as well as liable under principles of negligence and gross negligence.

17. In order to maximize profits, Defendants named herein deliberately coordinated to overcome the constraints imposed by the amount of medically necessary opioids that could be sold through controlled channels. The Defendants caused the change in the criteria that were to be applied by a physician to deem the treatment by opioids to be medically necessary. More specifically, the Defendants coordinated to expand the criteria such that it would allow opioids to be prescribed to patients beyond the initial purpose (i.e. for breakthrough pain). The Defendants realized that the number of cancer patients, the original target patient population, would not likely increase drastically from one year to the next, but if the indications for use of a particular drug could be expanded, then it could boost sales exponentially. Further, by creating a new robust primary market, the supply for the secondary "spill-over" diversionary market would result.

18. Once exposed to opioids with addictive properties, users of the opioids could easily transition into the secondary market, which was necessarily supplied from the primary market, and which Defendants were legally charged with ensuring there was no supply for. The Defendants knew that the demand from the secondary market created a pill mill industry that drove prescriptions written for the primary market.

19. Manufacturing Defendants' quest to open a new primary market for opioid prescriptions led to opioid treatment of chronic, widespread pain without dose limits or consideration of the addictive propensities of such medications/treatment. The Manufacturing Defendants convinced physicians to write prescriptions into this new market that would ensure through the insidious mechanism of addiction that patients would have to keep coming back for more. With the power to create both nearly unlimited supply and nearly unlimited demand for these highly-addictive

substances, the Manufacturing Defendants set out to create this new primary market. Each of the elements of the new primary market were selected to maximize sales of the highly addictive drugs. Manufacturing Defendants were the architects of the transition from a limited market pool of disease and injury (i.e., cancer, disorders requiring surgery, etc.) to widespread use to treat an ever-enlarging pool of common, non-life threatening maladies and conditions, such as arthritis, back pain, and joint pain. The universe of targeted patient conditions were vastly expanded by Manufacturing Defendants.

20. The Manufacturing Defendants engaged in this activity despite the fact that they knew that the benefits of opioids are minimal in comparison to known risks, which are extreme, even fatal. To accomplish this increase in sales, the Defendants downplayed concern for addiction and encouraged increase dosages as a beneficial approach to pain management. They convinced physicians to increase dosages without consideration of the addictive effects. However, prospective, randomized, controlled trials lasting at least 4 weeks that evaluated the use of opioids for chronic non-cancer-related pain showed only a negligible to modest improvement in pain-relief and no consistent improvement in physical functioning. The maximal adverse risks, however, included a "high incidence of opioid abuse behaviors" and "addiction."

21. Defendant Janssen, with other Manufacturing and Distributor Defendants, actively conspired to develop, grow, refine, produce, manufacture and market a new powerful variety of poppy which, in its refined form, became the active ingredient of a much more potent opioid. The Defendants knew and were fully aware that this new pharmaceutical ingredient increased the addictive properties of the drug.

22. Defendant J&J, through its subsidiaries, developed the Norman Poppy, a strain of the plant containing high levels of the compound Thebaine, which is a critical ingredient for the production of hydrocodone, hydromorphone, oxycodone, oxymorphone, nalbuphine, naltrexone, naloxone, and buprenorphine. Defendant J&J grew the Norman Poppy in Tasmania, Australia, and through its subsidiaries, sold active ingredients derived from these poppies for the manufacture of opioid drugs to other Manufacturing Defendants. Beginning in 1990 and continuing until at least 2016, Noramco and Tasmanian Alkaloids Limited, Defendant J&J's wholly owned subsidiaries, supplied opioid manufacturers with active ingredients derived from these poppies.

23. Upon information and belief, Defendant J&J's supplying of raw opioid ingredients enabled Manufacturing, Distributing, and Supplying Defendants to meet the growing demand for powerful and dangerous opioid drugs formed in the wake of the pharmaceutical industry's misleading mass marketing of opioid drugs to the medical community and directly to the public. By enabling the large-scale manufacture of these opioid drugs, Defendant J&J conspired to create an opioid epidemic, addicting millions of Americans to opioid drugs.

24. Thereafter, through the use of a highly coordinated, expensive, misleading, illegal, and callous manipulation of both the sales and distribution schemes for controlled substances within the United States, all Defendants expanded the market and flooded the country with highly addictive opiates.

25. To establish and exploit the lucrative market of chronic pain patients, Manufacturing, Distributing, and Supplying Defendants developed a well-funded, sophisticated, and fraudulent marketing and distribution scheme targeted at consumers and physicians. These Defendants used direct marketing, as well as veiled advertising by seemingly independent third parties, to spread misrepresentations about the risks and benefits of long-term opioid use – statements that created the

"new" market for prescription opioids, upended the standard medical practice, and benefited all Defendants. These statements were deceptive, false, and unfair. They were not supported by, and in fact, contrary to, the scientific evidence. These statements were also contrary to pronouncements by, and guidance from, the FDA and CDC based on that scientific evidence.

26. All Defendants created the aforementioned hazardous and deadly conditions to which Decedent DANIEL A. ROSEN was exposed and which caused Decedent DANIEL A. ROSEN to ingest and become addicted to opioid medications designed, manufactured, produced, sold, distributed and put into the stream of commerce by Defendants. The Defendants were negligent and grossly negligent in one, some, or all of the following respects, among others, same being the proximate cause of Decedent DANIEL A. ROSEN's addiction, illness, disabilities and death:

(a) in failing to properly design opioid medications for safe use by the reasonably anticipated and, indeed, target groups of patients prescribed and utilizing such medications;

(b) in failing to properly test said opioid medications before they were released for physician and patient use to determine the true levels of addiction;

(c) in misrepresenting the results of tests utilized to determine the addictive properties of opioid medications;

(d) in falsely promoting and advertising opioid medications to physicians and patients such as DANIEL A. ROSEN;

(e) in failing to timely and adequately warn Decedent DANIEL A. ROSEN and his prescribing physicians of the dangerous addictive characteristics and serious health hazards associated with opioid medications;

(f) in failing to provide Decedent DANIEL A. ROSEN and his prescribing

physicians with information as to what would be reasonably safe and sufficient usage of opioid medications, if in truth there were any, to protect Decedent DANIEL A. ROSEN from becoming addicted to same and, ultimately, harmed and disabled by his addiction to opioid medication;

(g) in failing to place timely and adequate warnings on the packaging of opioid medications to warn prescribing physicians and patients such as DANIEL A. ROSEN of the addictive and hazardous nature of such medications;

(h) in failing to take reasonable precautions or exercise reasonable care to publish, adopt, and enforce a plan to prevent addiction to opioid medication;

(i) in failing to develop and utilize a substitute substance or design to prevent addiction and/or to assist in ending addiction to opioid medications;

(j) in failing to recall or remove from the stream of commerce or refuse to distribute opioid medications despite knowledge of the unsafe and dangerous addictive nature of same;

Further, Defendants were negligent and grossly negligent through the following broad-scale actions:

(k) Consciously supplying the market in Texas with highly-addictive prescription opioids, including misrepresenting, understating, or obfuscating the highly addictive propensities of opioids;

(l) Using deceptive and misleading marketing, labeling, distribution, and dispensing practices;

(m) Affirmatively enhancing the risk of harm from prescription opioids by not protecting against diversion;

(n) Failing to properly review and analyze prescription orders and data for red flags;

(o) Failing to report suspicious orders or refusing to fill them;

(p) Failing to provide effective controls and procedures to detect and/or guard against theft and diversion of controlled substances;

(q) Failing to police the integrity of their supply chains; and

(r) Creating false and misleading information with the intention of having prescribing physicians rely upon it.

27. Finally, all Defendants are liable to Plaintiffs because they knew or should have known that opioid medications were highly addictive in nature and, as a result, unfit for the majority of patient groups including patients such as DANIEL A. ROSEN. Such opioid medications were unreasonably dangerous in normal use, and their failure to communicate this information constitutes negligent and grossly negligent conduct.

## IV. CONSPIRACY ALLEGATIONS AGAINST ALL DEFENDANTS

28. All of the allegations contained in the previous paragraphs are re-alleged herein.

29. Plaintiffs further allege that Defendants or their predecessors-in-interest knowingly agreed, contrived, combined, confederated, and conspired among themselves and with other entities to cause Decedent DANIEL A. ROSEN's addiction, illnesses and death by creating national conditions allowing for and promoting opioid addiction.

30. The Manufacturing Defendants entered into and/or benefitted from arrangements with seemingly unbiased and independent organizations or groups that generated treatment guidelines, unbranded materials, and programs promoting chronic opioid therapy, including the American Pain Foundation ("APF"), American Academy of Pain ("AAP"), American Pain Society ("APS"),

American Geriatrics Society ("AGS"), the Federation of State Medical Boards ("FSMB"), U.S. Pain Foundation ("USPF"), American Chronic Pain Association ("ACPA"), American Society of Pain Education ("ASPE"), National Pain Foundation ("NPF"), and Pain & Policy Studies Group ("PPSG").

31. Patient advocacy organizations and professional societies like these play a significant role in shaping health policy debates, setting national guidelines for patient treatment, raising disease awareness, and educating the public.

32. The Manufacturing Defendants collaborated, through the aforementioned organizations and groups, to spread false, reckless, and/or negligent messages about the risks and benefits of long-term opioid therapy.

33. The Defendants also had systematic links to and personal relationships with each other through their participation in lobbying groups, trade industry organizations, contractual relationships and continuing coordination of activities, including but not limited to, the Pain Care Forum ("PCF") and the Healthcare Distribution Alliance ("HDA").

34. The PCF has been described as a coalition of drug makers, trade groups and dozens of non-profit organizations supported by industry funding. The lobbyists for members of the PCF, including the named Defendants, shaped federal and state policies regarding the use of prescription opioids for more than a decade.

35. PCF members spent over $740 million lobbying in the nation's capital and in all 50 statehouses on an array of issues, including opioid-related measures.

36. All of the foregoing actions constituted an over-arching conspiracy to promote and sell opioid medications where none were needed or where such were so addictive that their hazards

substantially outweighed their usefulness to patients such as DANIEL A. ROSEN. In furtherance of these conspiracies, Defendants performed the following overt acts:

(a) for many decades, Defendants, individually, jointly, and in conspiracy with each other and other entities, have been in possession of medical and scientific data, literature and test reports which clearly indicated that opioid medications were unreasonably additive for safe use in most patient populations and, by extension, were unreasonably dangerous, hazardous, deleterious to human health, and potentially deadly;

(b) despite the medical and scientific data, literature and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other and other entities, fraudulently, willfully, and maliciously:

(1) withheld, concealed and suppressed said medical and scientific data, literature and test reports regarding the risks of addiction from Decedent DANIEL A. ROSEN and his prescribing physicians;

(2) caused to be released, published, and disseminated medical and scientific data, literature and test reports containing information and statements regarding the risks addiction, which Defendants knew were incorrect, incomplete, outdated, and misleading; and

37. As a direct and proximate result of Decedent DANIEL A. ROSEN's reliance on Defendants' false and fraudulent representations, omissions, and concealments, as well as that of his prescribing physicians, Decedent DANIEL A. ROSEN sustained damages including addiction, injuries, illnesses, disabilities and death and was deprived of the opportunity of informed free choice

in connection with the use of Defendants' addictive opioid medications.

## V. LOSS OF CONSORTIUM CLAIMS AGAINST ALL DEFENDANTS

38. All of the allegations contained in the previous paragraphs are re-alleged herein.

39. Plaintiff ALAN ROSEN AND JUDY ROSEN bring this cause of action against all Defendants for the loss of consortium with their son, Decedent DANIEL A. ROSEN. ALAN ROSEN AND JUDY ROSEN have suffered damages, both past and future, as a result of the acts and omissions of the Defendants described herein.

40. The physical injuries and death of Decedent DANIEL A. ROSEN were directly and proximately caused by the Defendants and have irreparably impaired the love, companionship, comfort, affection, solace, and moral support that Plaintiffs once shared in their relationship with their son, causing Plaintiffs pain and suffering in the past and to which they will in all likelihood continue to suffer in the future.

## DAMAGES

41. The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the addiction, illness, and death of Decedent DANIEL A. ROSEN and Defendants should be held liable for the following general and special damages including:

(a) Punitive and exemplary damages to punish Defendants for proximately causing Decedent DANIEL A. ROSEN's untimely addiction, illness, and death;

(b) The conscious physical pain and suffering and mental anguish sustained by Plaintiffs and Decedent DANIEL A. ROSEN;

(c) The physical impairment suffered by Decedent DANIEL A. ROSEN;

(d) The disfigurement suffered by Decedent DANIEL A. ROSEN;

(e) Reasonable and necessary medical expenses incurred by Decedent DANIEL A. ROSEN and PLAINTIFFS for Decedent's addiction treatment;

(f) Reasonable funeral and burial expenses incurred by PLAINTIFFS;

(g) Past and future loss of the companionship and society, care, maintenance services, support, advice, counsel and consortium which Plaintiffs would have received from the Decedent DANIEL A. ROSEN prior to his addiction, illness, disability and death;

(h) The past and future mental anguish suffered by Decedent DANIEL A. ROSEN's heirs as a consequence of observing the last illness and death of the Decedent DANIEL A. ROSEN;

(i) The past and future pecuniary loss and loss of inheritance suffered by Decedent DANIEL A. ROSEN's heirs as a consequence of the death of Decedent DANIEL A. ROSEN;

(k) Any and all recoverable survival and wrongful death damages on behalf of all statutory beneficiaries of the Decedent DANIEL A. ROSEN.

42. By their acts and omissions described herein, Defendants intentionally, knowingly, and recklessly caused serious bodily injury to Plaintiff within the meaning of Tex.Civ.Prac.& Rem. Code §41.008(c)(7) and Tex. Penal Code §22.04.

43. Plaintiffs filed suit within two (2) years of the date of Decedent DANIEL A. ROSEN'S death.

44. WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment against the Defendants, and each of them, jointly and severally, for general damages, for their costs expended herein, for interest on said judgment from the date this action accrued until paid, at the legal rate, and

for such other and further relief, both at law and in equity, to which Plaintiffs may show themselves justly entitled.

## VI. JURY DEMAND

Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

Respectfully submitted,

**WATERS & KRAUS, LLP**


*/s/ Susannah B. Chester-Schindler*
SUSANNAH B. CHESTER-SCHINDLER
State Bar No. 24056878
PETER A. KRAUS
State Bar No. 11712980
3141 Hood Street, Suite 700
Dallas, Texas 75219
(214) 357-6244
(214) 357-7252 Fax
schester@waterskraus.com

ATTORNEYS FOR PLAINTIFFS